UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RENEE M. LARA,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No. ED CV 09-00262-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

```
                considered the lay witness testimony;
     2.    Whether the ALJ properly considered the consultative
                examiner's opinion;
     3.    Whether the ALJ posed a complete hypothetical question to
                the vocational expert; and
     4.    Whether the ALJ properly considered the severity of
                Plaintiff's mental impairment.
```
(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT COMMIT ERROR WITH REGARD TO A FAILURE**

**TO CONSIDER CERTAIN LAY WITNESS TESTIMONY**

In Plaintiff's first issue, she identifies certain testimony at the original hearing in this matter.[1]

The testimony of Plaintiff's sister which is involved in Issue No. 1 occurred at the first hearing. During that testimony, which Plaintiff summarizes (see JS at 3-5), Plaintiff's sister testified that after the year 2000, Plaintiff had "more depression. And then

---

[1] The history of this matter indicates that after Plaintiff filed her original claim for a period of disability and disability insurance benefits, on September 24, 2004, it was denied, and ultimately she appeared at an administrative hearing on November 29, 2006. This resulted in an unfavorable decision (AR 51-57), which resulted in a remand by the Appeals Council for a new hearing. (AR 41-43.) That hearing occurred on March 27, 2008 (AR 112-149), resulting in the unfavorable decision which is the subject of this litigation. (AR 13-22.)

she had like a lot of problems with her back." Plaintiff's sister also testified that "When she gets real bad, she gets, you know - starts talking about suicide, you know, her suicidal thoughts." (AR 105.)

Plaintiff asserts that despite this credible lay witness testimony, the ALJ erred by failing to discuss or even mention it in his decision.

Plaintiff correctly cites case law which indicates that an ALJ can only reject testimony of a lay witness if he gives reasons which are germane to each witness whose testimony is rejected. (See Smolen v. Chater, 80 F.3d 1273, 1288-1289 (9th Cir. 1996).) Here, since the ALJ failed to incorporate the first decision in this matter, in which the ALJ made reference to the testimony of Plaintiff's sister, it might appear that Plaintiff has a meritorious issue. But Plaintiff's argument fails because the overriding principle in Social Security matters is that it is the ALJ's obligation not to discuss all evidence, but only to articulate why "significant probative evidence has been rejected." Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981), cited with approval in Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). In this sense, Social Security hearings are not unlike any contested matter presented to a trier of fact, in which the trier of fact must evaluate relevant evidence in order to reach a determination. In Social Security cases, there is often a very large amount of information presented and then incorporated within an administrative record, such as questionnaires, medical notes and diagnoses, technical reports, lay witness statements, and the like. If it were the obligation, ipso facto, of an ALJ to discuss every bit of evidence, then it might be fair to conclude that an ALJ's decision

would often be of equal length and volume as the evidence presented. Thus, the question here is whether the statements by Plaintiff's sister were of such probative value that they needed to be considered by the ALJ in the determination of the case. If they were not, then no error was committed. Further, harmless error principles apply to Social Security cases. Thus, the Court may determine that failure to consider this lay witness statement might be harmless error if, even having credited it, it would not have caused a reasonable ALJ to reach a different determination. See Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the relevant information contained within the statements from Plaintiff's sister have been noted; that is, that Plaintiff has some depression, some back problems, and sometimes has suicidal ideation. These very issues, however, were well known to the medical professionals whose opinions the ALJ considered. The first is the medical expert ("ME"), Dr. Sherman, who not only testified telephonically at the second hearing, but also provided answers to written interrogatories. In these answers to interrogatories, Dr. Sherman indicates she had reviewed a consultative psychological evaluation ("CE") performed on Plaintiff on November 5, 2007 at the request of the Department of Social Services by Dr. Reznick. (AR 632, 489-496.) Dr. Reznick considered Plaintiff's claim that her primary problem was depression and that she has suicidal ideation. (AR 490.) Similarly, Plaintiff's suicidal ideation is contained in progress notes which the ALJ fully considered. (See, for example, Oasis Crisis Services ("OCS") progress note of March 19, 2008 (AR 624)("PT admits to feeling suicidal ...")). Finally, Dr. Sherman incorporated and relied upon all of this evidence in rendering her opinion at the hearing. (See AR at 116-117.)

Considering the evidence in this case, it is quite apparent that the statements of Plaintiff's sister about depression and suicidal ideation were, at best, cumulative to similar evidence contained in numerous places in the medical record, which was considered in diagnostic opinions, and also relied upon by the ALJ in making his determination. Even if it was error not to discuss the statements of Plaintiff's sister in the decision, such error would be, at best, harmless.

For the foregoing reasons, Plaintiff's first issue has no merit.

## II

### THE ALJ PROPERLY CONSIDERED THE OPINION OF CONSULTATIVE EXAMINER DR. ROOKS

Dr. Rooks performed a consultative psychiatric evaluation ("CE") on January 4, 2005, and concluded, after conducting his examination, that Plaintiff's functional limitations which pertain to her work adaptability were as follows:

> "[Plaintiff] is able to understand, carry out, and remember simple instructions. She could perform mildly detailed and complex tasks, but might not persist with these for long periods of time."

(AR 352.)

Comparing this to the ALJ's determination as to Plaintiff's mental functional abilities, he found that Plaintiff is capable of "simple, repetitive, entry-level tasks in a non-public setting working with things rather than people." (AR 16.)

In comparing Dr. Rooks' evaluation with the ALJ's conclusions,

the Court finds a basic concurrence, and for that reason, simply fails to understand Plaintiff's Complaint, incorporated in her second issue, that the ALJ erred by failing to consider the opinion of Dr. Rooks. In particular, the ALJ concluded that, "the non-exertional limitations adopted herein consider the [Plaintiff's] mental condition and are consistent with the findings of the consultative examiner, the Board eligible psychiatrist and the licensed psychologists as well as the State Agency board certified psychiatrist." (AR 20, exhibit references omitted.)

There is no merit to Plaintiff's second issue.

### III
### THE ALJ POSED A COMPLETE HYPOTHETICAL QUESTION
### TO THE VOCATIONAL EXPERT

In Plaintiff's third issue, she contends that the ALJ's hypothetical question to the vocational expert ("VE") was incomplete, in that it omitted any reference to Plaintiff's non-exertional limitations; to wit, that the question "fail[s] to set out factors bearing upon Plaintiff's inability to persist with mildly detailed and complex tasks for long periods of time, ..." (JS at 14.)

Again, the Court is somewhat perplexed as to Plaintiff's framing of this issue.  The residual functional capacity ("RFC") as found by the ALJ limited Plaintiff to "simple, repetitive, entry-level tasks in a non-public setting working with things rather than people." (AR 16.) Indeed, Plaintiff somehow omits from her quotation of the hypothetical question as actually posed to the VE that it included the following language:

> "I would say this person is restricted to routine,

6

1     repetitive tasks, entry-level work, and working primarily
2     with things rather than with people, also, no production
3     quotas in the nature of assembly-line or piece work."
4 (AR 145.)

6     Clearly, the hypothetical question met the requirements
7 established in case law that the limitations posed must set out all of
8 the particular claimant's found limitations and restrictions. See
9 Embry v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988).

11 **IV**

12 **THE ALJ DID NOT IMPROPERLY FAIL**

13 **TO CONSIDER ASSERTED SIDE EFFECTS OF MEDICATIONS**

14     In Plaintiff's fourth issue, she notes that Plaintiff is taking
15 various medications, including Seroquel, Cogentin, and Zoloft, and
16 testified that she is "slow" because she takes these medications. (See
17 JS at 16, citing AR 118, 119.) As a result of this, the ALJ,
18 according to Plaintiff, erred by failing to consider side effects of
19 medications. Again, this is an issue which has no merit.

20     It is Plaintiff's burden to prove that any side effects from
21 medications existed and contributed to a disability finding. See
22 Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). Plaintiff
23 reaches for evidence in citing to the Court one assertion: alleging
24 that she is "slow" to try to substantiate her burden of proof. This
25 is nothing more than a classic mention of side effects insufficient to
26 establish the issue relied upon. See Osenbrock v. Apfel, 240 F.3d
27 1157, 1164 (9th Cir. 2001). Further, as the Commissioner notes, such
28 self-serving statements do not constitute, in and of themselves,

competent evidence to make the case.  See Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: October 5, 2009              /s/
                             VICTOR B. KENTON
                             UNITED STATES MAGISTRATE JUDGE